JOURNAL ENTRY AND OPINION
This is an appeal from an order granting summary judgment in favor of defendants-appellees, Emergency Professional Services and MedPartners, Inc. Appellant argues the trial court erred by failing to grant plaintiff's motion for partial summary judgment and by granting defendants' motion for summary judgment.
Appellant Douglas Weeks, M.D. was a shareholder and employee of Emergency Professional Services, Inc. (EPS), a corporation which provided emergency room services to various medical facilities. As a shareholder, Weeks had signed a Stock Redemption Agreement in July 1982. Both the Redemption Agreement and the actual shares of stock were held in escrow by the corporation's law firm, Calfee, Halter Griswold.
In the spring of 1996, Weeks decided to pursue a different area of medicine. He resigned as an employee from the corporation but continued to provide services for the corporation as an independent contractor. At the time of his resignation, Dr. Rybak, the President of EPS, cautioned Weeks that the corporation was negotiating a merger and that, if he remained with the corporation, his stock could be worth up to $1.2 million. Both Weeks and Rybak were under the mistaken impression that if Weeks stopped full time employment with EPS, then Section 2 of the Stock Redemption Agreement required Weeks to redeem his shares and return them to EPS in exchange for an amount determined by the Stock Redemption Agreement, in this case $2,436.00. The provision in question states:
 2.1 Purchase by the Company. * * * (c) in the event that the employment of Shareholder as an employee or independent contractor is terminated through retirement or for any other reason * * * then * * * all the Shares owned by * * * Shareholder shall be deemed to be offered to the Company for purchase by it and Shareholder * * * shall sell, and the Company hereby agrees that it shall purchase, from its surplus, all the Shares at the price and upon the terms set forth below.
Both Weeks and Rybak were unaware that the agreement, in fact, permitted ownership of stock even for part-time employment or employment as an independent contractor.
On the basis of Rybak's mistaken representation of the Agreement requirement, Weeks accepted the redemption and cashed the payment for his eight shares of EPS stock. When EPS's legal counsel, Kenneth Scheimchel, discovered that Weeks was still working as an independent contractor, he became concerned because Section 2 of the Stock Redemption Agreement stated that the corporation had the right to redeem the stock in the event that the employment of Shareholder as an employee or an independent contractor is terminated through retirement or for any other reason * * *. Stock Redemption Agreement at 4. Because Weeks was still working as an independent contractor, the corporation had no right to force redemption of Weeks' stock.
To prevent any claims arising from Rybak's mistaken representation that a change from full to part-time employment or independent contractor status required redemption of stock, attorney Scheimchel drafted a release for Rybak to send to Weeks which requested that Weeks waive any claims he may have against the corporation. The language and intent of this release is the crux of this case. The letter from Rybak to Weeks states as follows:
 This letter is in follow up of our recent conversations concerning your performing services for EPS as a part-time independent contractor.
 As I mentioned, EPS's legal counsel has advised it that EPS should not allow you to perform further services as an independent contractor unless you release EPS from claims you might have in respect of your prior capacities as an employee or shareholder.
 Thus, EPS will permit you to continue to perform services as an independent contractor, consistent with your practice since April 30, 1996, only if, by signing this letter where indicated and returning it to me by Friday, June 14, 1996, you agree on behalf of yourself, your heirs, executors, administrators, successors and assigns, to release EPS and all of its shareholders, officers, and directors from any and all claims, whether known or unknown, you may have in your capacity as an employee or shareholder of EPS, including any and all claims arising out of or relating to your Employment Agreement and/or your Stock Redemption Agreement. * * *
At the time this release was drafted and signed, none of the persons involved with it was aware of the existence of Section 7 of the Stock Redemption Agreement, which states as follows:
 [i]n the event that the Company does purchase the Shares of Shareholder as provided for hereunder, and thereafter the Company is sold and/or liquidated within one (1) year from the date of such purchase, Shareholder * * * shall participate pro rata in the proceeds of any such liquidation or sale * * * in excess of the price paid for his Shares by the Company to the same extent that such Shareholder would have participated in such liquidation and/or sale had his Shares not been purchased.
In their depositions, Weeks, Rybak, and attorney Scheimchel all testified that they had no idea that this section existed, and would never have executed the release signed by Weeks had they known about Section 7.
In a merger transaction effective September 23, 1996, MedPartners acquired EPS as a wholly owned subsidiary and exchanged all outstanding shares of EPS for $44 million worth of MedPartners' common stock. Weeks's shares under this agreement were worth approximately $1.2 million.
EPS was to supply MedPartners with a list of all the individuals who were entitled to participate in this merger. EPS's list contained the names of the 57 physicians who were stockholders at the time of the merger, but did not contain the names of the five physicians who had redeemed their stock within one year of the merger date. Three of those physicians filed suit in Common Pleas Court and obtained a judgment against EPS and MedPartners. None of those three doctors had signed any form of release. At least one of them, however, had received a draft of a release, which he was requested to sign. The unsigned draft references future claims. Letter to Dr. John Tafuri from Dr. James Rybak, dated February 29, 1996, attached to Appellant's Brief as Exhibit I.
Another physician, Dr. Mark Tripp, who is not a party to that suit, did sign a release. There is no evidence that Tripp pursued any legal action regarding this release or his stock. There is a significant difference between that release and the letter signed by Weeks, however, and that signed by Tripp. Tripp's release contained a quid pro quo in the form of extra profit sharing and pension benefits expressly in exchange for his release of EPS. This release was from all claims you may have now or in the future, including claims for additional compensation or relating to your ownership of EPS shares * * *. Letter from James Rybak, M.D. to Mark Tripp, M.D. dated February 8, 1996, attached to Appellate's Brief as exhibit H. No such consideration was involved in Weeks' release, and no reference was made to future claims.
Shortly after the three physicians obtained judgment against EPS and MedPartners, Weeks filed the instant suit. His first amended complaint, filed June 30, 1998, contains eight counts: breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraudulent misrepresentation, fraud in the factum, fraud in the inducement, and punitive damages. Weeks had filed a motion for partial summary judgment on the first count for breach of contract. EPS and MedPartners filed a cross motion for summary judgment. In their cross motion they address only the contract issues in the case. The trial court denied Weeks's partial motion for summary judgment and granted a cross motion for summary judgment filed by EPS and MedPartners. Weeks timely appealed.
Because they require the court to address identical facts and law, Weeks' two assignments of error will be addressed together:
 I. THE TRIAL COURT ERRED BY FAILING TO GRANT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
 II. THE TRIAL COURT ERRED BY GRANTING DEFENDANTS'-APPELLEES [sic] MOTION FOR SUMMARY JUDGMENT.
The trial court granted EPS's motion for summary judgment on the contract issue. In that motion EPS argued that the release signed by Weeks was a valid waiver of his right to his share of the stock options. Weeks counters, however, that the release is a result of mutual mistake. He states that all the evidence proves that by the release the parties intended to eliminate any claim arising from Section 2 of the Stock Redemption Agreement. The purpose of the release was to prevent problems resulting from the improper redemption of Weeks' stock when he resigned from the corporation, not to eliminate a potential claim under Section 7.
Weeks' stock already had been redeemed a month prior to his signing the release papers. In his mind, he was not negotiating any terms by signing the release; in fact, at that time he was unaware of his rights under section 7.
Because Weeks no longer owned outstanding stock, when attorney Scheimchel was questioned about what consideration Weeks received for signing the release in June 1996, Scheimchel responded,
 Dr. Weeks had no right to continue to perform services. My understanding is that he was an independent contractor at will, and the consideration was EPS allowing him to continue to perform the services.
Scheimchel deposition, Appellant's brief, Exhibit 7 at 166, lines 10-14. This is obviously inadequate consideration to exchange for $1.2 million.
A review of the depositions of Weeks, Rybak, and Scheimchel reveals that none of them was aware that Section 7 of the Stock Redemption Agreement existed. Rybak and Scheimchel stated they would not have considered asking for this release, nor would Weeks have signed it, if they had been aware that $1.2 million was at stake. As Weeks states in his motion for partial summary judgment, the unanimous testimony confirms that no one contemplated that the look back provision would be encompassed in the terms of the June 5th letter * * *. Plaintiff's Motion for Partial Summary Judgment at 28.
Appellees argue that Schmeichel stated in his deposition that the release was not limited to Weeks' rights under Section 2 of the Stock Redemption Agreement: The release is broader than that. Defendants' Motion for Summary Judgment, Exhibit 7 at 24. Schmeichel states, I also made an inquiry of either Dr. Rybak or Mr. Slonaker [another officer of the corporation] whether Dr. Weeks had any claims against EPS that should be excluded from a general, broad, all encompassing release. Id. at 24-25. He states that they did not raise any other issues with him at that time. However, as all their depositions indicate, none of the people involved in the discussion was aware of Section 7 until September 30, 1996, when Tafuri made his claim as a redeemed stockholder. That Schmeichel intended a release broader than claims arising under section 2 does not mean that he intended to include claims under section 7 a provision he clearly said he was unaware of and would not have asked a release for. Nor does the intent to be all encompassing deny that a mutual mistake of fact occurred.
Appellees, on the other hand, assert that they intended the release to cover any and all outstanding claims. In support, they rely on Sloan v. Standard Oil Co. (1964), 177 Ohio St. 149:
 [T]he Sloan Court held that a release may be avoided if a mutual mistake of fact is shown as to a `past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished (emphasis in the original). In addition, the Sloan Court ruled that whether the parties to the release `actually intended to discharge all liability is a question of fact for the trier of facts.' Sloan v. Standard Oil Co., at Syll. 1 and 2.
Defendants' Cross Claim for Summary Judgment at 16. The Sloan court explained further, however, that where recission or cancellation of the release is sought, the spirit of equity is given great emphasis * * *. It is required that the release must be fairly and knowingly made. Annotation, 71 A.L.R. 2d 82, 89. Id. 152. Receiving $2,436.00 for stock worth approximately $1.2 million is hardly a fair exchange. Moreover, because the parties signed the document erroneously believing the redemption was a requirement, the release was not knowingly made.
Appellees also rely on Task v. National City Bank (Feb. 10, 1994) Cuyahoga App. No. 65617, unreported, 1994 WL 43883, in which this court found that the release Task had signed was valid. However, the court also held that [w]hether a release operates upon a certain liability depends entirely upon the intention of the parties, which is to be gathered from the language of the release and the state of facts then existing. Id. at 3. The court stated that
 This court is further mindful that where general words alone are used in the release, they are to be construed most strongly against the releasor. * * * When, however, the terms of a release are so general as to include within its terms claims to which the releasing party was ignorant, and thus not within the contemplation of the parties when the release was executed, the release is voidable at the option of either party.
Task at 5.
Appellees further argue, however, that the Task court added that plaintiff-Task's `lack of diligence in ascertaining whether he had other claims and his consequent lack of knowledge of his rights and the legal effect of the scope of the release are not grounds to relieve him of the effect of the release.' Defendants' Cross Motion for Summary Judgment at 17. Appellants argue the court should reach the same conclusion in the instant case. However, appellants omitted from the Task quotation the preceding sentence, which states, Our review of the record reveals that Mr. Task raises no allegations of any conduct on the part of National City, nor is any evidence apparent from the record that could be construed as raising a question of material fact on the issue of mutual mistake by the parties in entering into the release. Task at 6.
This circumstance differs significantly from the facts in the case at hand. Weeks has provided copious evidence of mistake of fact on the part of both parties to the release, as well as on the part of counsel for appellees. The Sloan court held that a release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact, unless it appears that the parties intended that all claims be relinquished. [Emphasis added.] Task at 5, citing Sloan v. Standard Oil Co. (1964), 177 Ohio St. 149. In the instant case, there is no evidence contradicting the claim of mutual mistake. On the contrary, all agree that the agreement was not meant to cover claims under section 7. Thus appellants' first and second assignments of error are well taken.
The granting of defendants' summary judgment motion is overruled, and the denial of the plaintiff's partial motion for summary judgment is reversed. This case is remanded to the trial court for proceedings consistent with this judgment.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J., and KENNETH A. ROCCO, J., CONCUR (See (Concurring Opinion, Rocco, J.).